IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ROXANNE C. BLACK**,

    Plaintiff,

        v.

**MICHAEL J. ASTRUE,
Commissioner of Social Security**,

    Defendant.

No. 3:10-cv-06409-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Roxanne C. Black challenges the Commissioner's decision denying her claim for Supplemental Security Income ("SSI") disability benefits. I have jurisdiction under 42 U.S.C. § 405(g). For the reasons stated below, I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

    On February 25, 2008, Ms. Black protectively filed for SSI under Title XVI of the Social Security Act. AR 11.[1] This application was denied initially on July 18, 2008, and upon reconsideration on October 16, 2008. *Id*. An administrative law judge ("ALJ") held a hearing on July 21, 2010. *Id*. On August 9, 2010, the ALJ issued his decision denying Ms. Black's

---

[1] Citations to the Administrative Record ("AR") refer to the indicated pages in the official transcript of the Administrative Record, filed with the Commissioner's Answer on April 26, 2011 [12].

1 – OPINION AND ORDER

application. AR 20. The Appeals Council denied review on November 17, 2010, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Black timely appealed on December 10, 2010.

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); *see also* 20 C.F.R. § 416.920 (establishing the five-step evaluative process for SSI claims). At Step One the ALJ found that Ms. Black had not engaged in substantial gainful activity since February 25, 2008, the date of the application. AR 13. At Step Two the ALJ found that Ms. Black suffered from "insulin dependant [sic] diabetes mellitus; sleep apnea; obesity; migraine headaches; fibromyalgia; lumbar scoliosis; depression; anxiety; learning disorder; attention deficit disorder; and dependant [sic] personality disorder." *Id*. Continuing to Step Three, the ALJ found that the combination of impairments does not meet or equal a disorder listed in the Commissioner's regulations. AR 13-15.

The ALJ next evaluated Ms. Black's residual functional capacity ("RFC"), finding that she could perform light work, as defined in 20 C.F.R. § 416.967(b), with the following limits:

> [D]ue to chronic pain and fatigue attributable to her severe physical impairments, she can perform tasks that involve no more than 6 hours of standing/walking, or more than 6 hours of sitting in an 8-hour workday. Such tasks may involve no more than occasional stooping, kneeling, crouching, or crawling. Due to migraine headaches, the claimant should avoid concentrated exposure to noisy work environments. Due to cognitive and emotional limitations attributable to her mental impairments, she can perform tasks that involve simple instructions that are equivalent to unskilled work, . . . that involve only occasional contact with co-workers or the general public.

AR 15-16. At Step Four the ALJ found that she had no past relevant work experience. AR 19.

The ALJ continued to Step Five, relying upon testimony from a vocational expert to find that Ms. Black could perform the requirements of representative occupations such as assembler, small products, meter reader, garment sorter, and assembly machine tender, and that these jobs

existed in significant numbers in the national economy. AR 20. Based on the Step Five finding, the ALJ denied benefits. *Id*.

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882. Finally, "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

## DISCUSSION

Ms. Black presents four assignments of error: (1) The ALJ erred because he did not properly evaluate the medical evidence regarding Ms. Black's physical and mental impairments; (2) the ALJ erred because he did not properly evaluate Ms. Black's credibility; (3) the ALJ erred because he did not properly evaluate the credibility of lay witnesses; and (4) because of the errors in evaluating the medical evidence and the credibility of witnesses, the ALJ's RFC finding failed to account for all of Ms. Black's limitations and, as a result, the vocational expert testimony was defective.

3 – OPINION AND ORDER

I.    **The Medical Evidence**

    A.    *Physical Impairments*

Ms. Black challenges the ALJ's consideration of evidence from an examining doctor, Dr. Mitchell Sally, and a treating doctor, Dr. Mark Olson. If a doctor's opinion "is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citation omitted). If the doctor's opinion is contradicted by another doctor, the Commissioner must give "specific and legitimate reasons" that are "supported by substantial evidence in the record" before rejecting it. *Id.* "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.

As the ALJ correctly pointed out (AR 17), Dr. Sally's opinion was contradicted by at least one doctor, so the ALJ was required to give only specific and legitimate reasons that are supported by substantial evidence in the record. Dr. Sally opined that Ms. Black could stand/walk for a total of four hours in an eight-hour workday, and could sit for four hours in an eight-hour workday. AR 359. He further opined that she could lift or carry 5-10 pounds frequently, and 5-10 pounds occasionally, and that postural activities such as bending, stooping, and crouching should be performed only occasionally. *Id*. In rejecting Dr. Sally's opinion and adopting a less restrictive RFC, the ALJ discussed how the claimed severity of symptoms was not consistent with Dr. Sally's own objective findings or her own reports of daily living. AR 17. For example, the ALJ noted that Dr. Sally reported that in his 2008 examination, despite subjective complaints of pain of "9" on a scale of "10," Ms. Black did not appear outwardly distressed, she was able to transfer from the chair to the examination table "easily," and although she removed her shoes with some difficulty, she was able to sit "comfortably" and walk "without difficulty." *Id*. Further, the ALJ noted that Ms. Black demonstrated the ability to grip and hold

4 – OPINION AND ORDER

objects securely, as well as grasp and manipulate both large and small objects, despite the fact that there was "mild evidence of poor effort" on Ms. Black's part. *Id*. Dr. Sally's examination notes also reveal full strength in her extremities, a normal gait, and "a mild curvature of the lumbar spine . . . that is mild at the greatest degree." AR 358-59. The ALJ provided sufficient explanation, supported by substantial evidence, for rejecting Dr. Sally's opinion as unsupported by, and in conflict with, objective medical evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

       The ALJ provided additional specific and legitimate reasons. The ALJ found that "greater weight" was owed to the subsequent assessments provided by state agency medical consultants Drs. Richard Alley and Martin Kehrli. AR 17. He found this because the assessments of these physicians comported with the "benign objective medical findings" as well as Ms. Black's "fairly intact activities of daily living" found elsewhere in the record. *Id*. While the opinion of a nonexamining doctor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or treating physician, it can be one of other factors considered by the ALJ in making his determination and constitutes "substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149; *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). I agree that the two state consultants provided opinions consistent with other evidence in the record, including the medical evidence and Ms. Black's reported daily activities. Among other things, Ms. Black reported that she walks and drives, takes care of her husband and infant son, is able to prepare "quick foods and simple dishes" several nights a week, and does a variety of household chores such as laundry, dishes, cleaning the bathroom, and pulling weeds. AR 171-72. Probably most importantly, she estimated she could lift "20 pounds maybe," and that her ability to lift, squat,

stand, and sit were not impaired at all. AR 175. Because the ALJ gave several specific and legitimate reasons that were supported by the record, the ALJ did not err by discrediting Dr. Sally's opinion.

Ms. Black also assigns error to the ALJ's rejection of Dr. Olson's April, 2010, one-page letter that identified by name Ms. Black's medical problems, followed by one line that she is "unable to undertake any gainful employment" and that her medical conditions "are permanent in nature." Dr. Olson's conclusion is contradicted by the opinions of Drs. Sally, Kehrli, and Alley, who opined that Ms. Black was capable of performing some level of light work. AR 359, 366, 393. The ALJ cited to several reasons for rejecting Dr. Olson's conclusion. First, he noted that the assessment was not accompanied by any objective medical findings. AR 18. Second, he noted that "[j]ust over a month [after writing the aforementioned letter], Dr. Olson noted that despite past complaints of pain, the claimant appeared 'quite happy and comfortable' and was looking forward to playing basketball for Special Olympics."[2] *Id*. Third, he noted that she had a poor history of compliance with her diabetes medication, which had prompted her diabetes case manager to withdraw from her case. *Id*. Fourth, he noted that the conclusion appeared unjustified in light of Dr. Sally's findings of poor effort and benign objective findings. *Id*. And finally, he noted that he rejected the opinion because the statement was a conclusory statement about disability that is reserved for the Commissioner, not one to be decided by a physician, treating or otherwise. *Id*.

Ms. Black does not argue that the ALJ failed to provide specific reasons for not crediting Dr. Olson's opinion, but argues instead that the reasons given were not legitimate. She asserts

---

[2] The ALJ's timeline of events here is incorrect but even plaintiff does not argue that this error matters. The ALJ stated that the visit which prompted these remarks was "[j]ust over a month later," although the medical records indicate that the visit actually occurred in November 2009, approximately five months prior to the letter written by Dr. Olson. The error is harmless because it was inconsequential to the ultimate result and doesn't undercut the ALJ's basic point, i.e. that Dr. Olson's conclusion was inconsistent with other evidence.

6 – OPINION AND ORDER

legal error with respect to the ALJ's use of "poor effort" and "benign objective findings" as evidenced in Dr. Sally's report as reasons to reject Dr. Olson's opinion.

Ms. Black's argument is not well taken because even if these specific reasons are not legitimate, the ALJ specifically relied on several other reasons to support his rejection of the opinion. An ALJ may "discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted). As noted by the ALJ, Dr. Olson's April 2010 letter was indeed not accompanied by any objective medical findings. The treatment notes from the visit which prompted the letter do not identify objective medical findings that might be the basis for Dr. Olson's ultimate conclusion (AR 495), and there is no indication of objective medical findings in the letter itself, which contained no other information aside from a list of Ms. Black's physical and mental impairments (which the ALJ agreed with in determining her severe impairments under Step Two). AR 520. Also, as noted by the ALJ, the conclusion was not supported by Dr. Olson's own treatment notes which indicated she would present with less severe symptoms and complaints when seeking medical clearance to participate in basketball games. AR 18. Treatment notes from an October, 2009 visit indicated that she was "exquisitely tender" everywhere she was touched and that she came into the room in a wheel chair, but an addendum from Dr. Olson added after the visit noted that "[o]f interest, [Ms. Black] came to urgent care with ill child *the very next day* and she moved freely, was smiling and seemed in no discumfort [sic] at all." AR 404 (emphasis added). This evidence provides a sufficient reason to reject Dr. Olson's conclusion.

In any event, while a medical opinion regarding the ability to work is potentially useful, a patient's ability to work is a legal issue reserved to the Commissioner and the ALJ was therefore

not in any way bound by the conclusion Dr. Olson reached. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). For that reason too, rejection of Dr. Olson's conclusion was appropriate.

Because the ALJ provided specific and legitimate reasons for rejecting the opinions of these physicians, the ALJ did not err.

### B.     *Mental Impairments*

Ms. Black also asserts error in the ALJ's crediting and weighing of evidence from examining psychologists, David A. Freed and Paul Kruger, and state agency nonexamining psychological consultants Dorothy Anderson and Sandra Lundblad.[3] The ALJ's RFC finding related to memory impairments was as follows: "Due to cognitive and emotional limitations attributable to her mental impairments, she can perform tasks that involve simple instructions that are equivalent to unskilled work, . . . that involve only occasional contact with co-workers or the general public." AR 16.

Ms. Black claims that the ALJ selectively credited the evidence from examining psychologist, Dr. Freed.[4] In November of 2006, Ms. Black was referred to Dr. Freed for a learning disability evaluation. AR 223. Ms. Black asserts that based upon the psychological testing performed, Dr. Freed opined that Ms. Black "*possibly* suffered from learning disabilities related to reading and writing; memory performance was 'moderately impaired;' formal and informal testing demonstrated impairments in attention and concentration." (Pl.'s Br. [15] 6) (emphasis added). Ms. Black asserts that the ALJ erred because the RFC did not comport with Dr. Freed's findings, and specifically that it did not "include a specific reading functional

---

[3] Although Ms. Black also asserts initially that "[t]he ALJ failed to properly evaluate the evidence from … the treating psychologist, Catherine de Campos, Ph.D.," she fails to offer a single argument as to why this is so and I reject this argument on the merits in any event.

[4] Ms. Black also claims that "the ALJ did not even acknowledge or consider the evidence from Dr. Freed." The ALJ, however, specifically discussed Dr. Freed's clinical diagnoses of Ms. Black (AR 18); he also specifically acknowledged that he gave great weight to the assessments by state agency consultants who "reviewed all available evidence," including Dr. Freed's November 2006 report.

8 – OPINION AND ORDER

limitation, a specific memory limitation, and or a specific attention and concentration limitation." (*Id*. at 7).

State nonexamining psychological consultants Drs. Anderson and Lundblad reviewed the medical evidence in July and October, 2008, respectively. AR 374–391, 392. Dr. Anderson opined that Ms. Black could "understand[], remember[] and follow[] short, simple and repetitive tasks in a structured environment" that involved only occasional contact with co-workers or the general public. Dr. Lundblad affirmed this finding. AR 392. The ALJ may rely on the opinion of a nonexamining doctor to translate mental limitations into concrete restrictions in the RFC assessment. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). This does not constitute a rejection of Dr. Freed's findings. Dr. Freed's assessment of the *possibility* of learning disabilities involving reading and writing, as well as moderate mental and attention/concentration impairments, are not specific workplace limitations. Dr. Anderson's report provides the missing analysis—Dr. Anderson acknowledged that Ms. Black exhibited "some difficulty w[ith] attention and concentration," but that she was "capable of understanding, remembering and following short, simple and repetitive tasks in a structured environment." AR 390. Therefore, Dr. Freed's opinion was sufficiently accounted for by the ALJ.

Ms. Black also takes issue with the ALJ's handling of Dr. Kruger's July 2008 psychological evaluation. She asserts that although the ALJ said he accorded "great weight" to Dr. Kruger's opinion, he "selectively accorded weight to Dr. Kruger's opinion that was consistent with the ALJ's pre-determined conclusion that Claimant was not disable [sic]." (Pl.'s Br. [15] 9). She also argues that Dr. Kruger opined a functional limitation related to "verbal information processing" which was not taken into account in the RFC assessment. She further

9 – OPINION AND ORDER

asserts that the jobs identified by the vocational expert included training requirements incompatible with this functional limitation.

After reviewing Dr. Kruger's report and the ALJ's analysis, I find that the ALJ accorded adequate weight to Dr. Kruger's assessment. Dr. Kruger opined that Ms. Black was capable of learning and recalling "simple, brief, limited, hands-on tasks" within an appropriate time, although it would be difficult for her to add details to those tasks and be able to recall the information at a later date. AR 353. This information was accounted for in the RFC which provided that Ms. Black "can perform tasks that involve simple instructions that are equivalent to unskilled work." Accordingly I reject Ms. Black's argument that the ALJ accorded only selective weight to Dr. Kruger's assessment.

As to her second argument, Dr. Kruger briefly mentions in the second to last paragraph of his "concluding remarks" that if Ms. Black "were performing various simple, repetitive tasks and was required to add details to those tasks, *particularly if those details were verbal*, this most likely would be challenging for her." AR 353 (emphasis added). However, Dr. Kruger's brief statement in this regard, with no objective evidence in the medical record to support it, does not appear to be a diagnosis or a functional limitation on Ms. Black's abilities. Ms. Black does not suggest any specific functional limitation grounded in this statement.

Even if Dr. Kruger's statement did give rise to a specific limitation, Ms. Black has failed to offer any evidence as to why failing to include a "verbal information processing" limitation in her RFC renders the vocational expert's determination of possible jobs incompatible with Dr. Kruger's testimony. Ms. Black seems to be alleging that the existence of such a limitation would render *any* individual unable to complete the training periods for performing the unskilled jobs that were identified at Step Five. She fails to offer a single reason for her conclusion, either

generally or in regards to why she specifically would be unable to complete the training periods for such jobs. Accordingly, I find that the ALJ properly accounted for Dr. Kruger's assessment.

Ms. Black next argues that the ALJ erred in selectively crediting the opinion of the state agency non-examining psychological consultants, Drs. Anderson and Lundblad, by only adopting some of the functional limitations they assessed. Specifically, she argues that Ms. Black's RFC failed to include a "structured environment" or "predictable work place routine" limitation. As the Commissioner correctly points out, while the RFC does not include the specific words of "a predictable workplace routine" or "a structured environment," the ALJ did include such a restriction in his hypothetical to the vocational expert. Specifically, the ALJ's hypothetical included occupations "that have short, simple, repetitive tasks *in a structured environment* and by that, they define that as *a predictable workplace routine*." AR 83 (emphasis added). Thus, the vocational expert's findings fully incorporated the limitations opined by Dr. Anderson related to a predictable workplace routine. Any error in not mentioning the structured/predictable environment limitation in the ALJ's opinion is therefore harmless. *See Tommasetti*, 533 F.3d at 1038.

## II.   Ms. Black's Credibility

Ms. Black argues that the ALJ improperly determined she was not entirely credible based on the RFC, rather than first determining her credibility and then determining the RFC. Other than the fact that the ALJ stated his conclusion regarding credibility before providing an explanation, Ms. Black offers no evidence in support of this "cart before the horse" argument. There is nothing wrong with an ALJ stating a conclusion and then explaining it, as opposed to providing explanation and then reaching a conclusion. Therefore I reject this argument.

She also argues the ALJ erred in not stating specifically why she was not fully credible. This argument fails as well. Once a claimant shows an underlying impairment which may "reasonably be expected to produce the pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). The ALJ may consider ordinary credibility factors, objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ made specific findings regarding Ms. Black's credibility. For example, the ALJ found Ms. Black's hearing testimony "not entirely consistent" with her previous reports to her doctors regarding the reasons she was not employed. AR 17. She testified that "[t]he main reason why [my previous jobs] ended is because I was not fast enough. I couldn't keep up with productivity" (AR 57); however, she told Dr. Sally in 2008 that "[s]he stopped working because she wanted to get pregnant and because of her back pain." AR 356. In addition, she told Dr. Kruger in 2008 that in the next four to five years her interest was to "stay at home and be a mom, and have more kids." *Id*. The ALJ found the evidence regarding her plans of motherhood "suggest[ed] that despite her pain symptoms, the claimant considers herself physically capable of both child birth and child rearing." *Id*. While plaintiff makes the conclusory argument that this reason was "simply silly," I find it sufficient. Plaintiff claimed she is unable to work due to

12 – OPINION AND ORDER

debilitating pain and, every other day, unable to do anything but lie down due to migraines. AR 61-62. Those claims are not consistent with a plan to not work in order to have more children. These claims are also not consistent with her reported activities of daily living and the objective medical evidence that shows that she is capable of light work, as discussed above.

In any event, where an ALJ provides some reason for discrediting testimony but that reason alone is insufficient, the error is harmless as long as there is "substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008). In other parts of the ALJ's decision, the ALJ described Ms. Black's reports of daily living, explaining that "she has no problem with personal care," she "can prepare simple meals and perform a variety of household chores and yard work, including laundry, cleaning the bathroom, washing the dishes, and weeding the yard." AR 14. I find her activities of daily living provide additional evidence in support of the ALJ's credibility finding, as do the findings of several doctors that she is not as debilitated as she claims. Therefore, while I consider the ALJ's explanation sufficient here, an error would be harmless in any event.

The ALJ's credibility determination was based on clear and convincing reasons supported by specific findings in the record, so he did not err by finding Ms. Black was not entirely credible.

### III.     Lay Witness Testimony by Marvin Black Sr. and Marvin Black Jr.

Ms. Black next argues that the ALJ improperly considered the evidence from lay witnesses Marvin Black Sr., Ms. Black's father-in-law, and Marvin Black Jr., Ms. Black's husband.

An ALJ must take into account lay testimony as to a claimant's symptoms, unless he gives germane reasons to discount such evidence. *See Strout v. Comm'r of Soc. Sec. Adm'n*, 454 F.3d 1050, 1053 (9th Cir. 2006). The ALJ rejected a portion of Mr. Black Sr.'s report—specifically that Ms. Black "cannot take criticism or direction from people." AR 18-19. The ALJ found this to be contrary to medical evidence from Dr. Sally, as well as Ms. Black's own report. *Id*. He did, however, specifically consider Mr. Black Sr.'s report that she has difficulty with complex tasks, and gave this evidence partial weight. AR 19. Ms. Black argues that the ALJ did not specifically consider other evidence in the report that supported a disability determination, such as Mr. Black Sr.'s report that her grandparents help with her baby when she cannot, that she forgets to take her medications, that she cannot use money because change confuses her, and that she has a very short memory. Although an ALJ may not selectively read the record, he need not "discuss evidence that is neither significant nor probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The reason for rejecting one part of Mr. Black Sr.'s testimony was sufficient and plaintiff has not explained how the ALJ actually discredited the remainder of Mr. Black Sr.'s testimony, i.e. how the testimony was inconsistent with the RFC the ALJ established. Accordingly, I reject this argument and find that, to the extent the testimony was discredited, that decision was adequately explained and supported. To the extent it was not discredited, the ALJ did not need to discuss why it was not being discredited.

The ALJ gave "partial weight" to Mr. Black Jr.'s testimony, stating that Mr. Black Jr. "testified that the claimant is extremely emotional and has a hard time comprehending and following through with instructions. He did not see how the claimant could perform any jobs he is aware of." AR 19. I see no error here. The ALJ did indeed give partial weight to Mr. Black Jr.'s testimony because the ALJ adequately incorporated some work-related limits suggested by

Mr. Black Jr.'s testimony. For example, the statement that Ms. Black "has a hard time comprehending and following through with instructions" is accounted for in the portion of the RFC which states "due to cognitive and emotional limitations … she is limited to tasks that involve simple instructions that are equivalent to unskilled work." AR 16.[5] To the extent Mr. Black Jr. suggested other work-related limitations not reflected by the RFC, I find the ALJ properly rejected that testimony. The ALJ combined his credibility analysis of Mr. Black Sr. with that of Mr. Black Jr., and I infer that he partially rejected Mr. Black Jr.'s testimony for the same valid reasons he rejected the testimony of Mr. Black Sr. (*See* AR 18) (considering the "lay witness evidence and testimony offered by Marvin Black, Sr., the claimant's father-in-law, and Marvin Black, Jr., the claimant's husband").

## IV.   Step Five Finding

At Step Five, the ALJ found that Ms. Black could perform the requirements of representative occupations such as assembler, small products; meter reader; garment sorter; and assembly machine tender, and that these jobs existed in significant numbers in the national economy. Ms. Black argues that the ALJ's Step Five finding is not supported by substantial evidence because the RFC assessment was deficient for the reasons argued above. As discussed above, I do not find that the RFC was deficient on any of Ms. Black's proffered reasons, and therefore find that the ALJ's nondisability finding was not in error.

---

[5] Other portions of his testimony fail to provide any specific work-related limitations that the ALJ might have incorporated into the RFC. For example, plaintiff argues that Mr. Black Jr.'s statement that Ms. Black "doesn't like going anywhere alone" was improperly discredited. (Pl.'s Br. [15] 19). Unsurprisingly, plaintiff does not explain how this testimony might have translated into a RFC limitation.

## CONCLUSION

For the reasons explained above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this  7th  day of December, 2011.

                                               /s/ Michael W. Mosman
                                             MICHAEL W. MOSMAN
                                             United States District Court